## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**RICKY GIVENS,**

      **Plaintiff,**

  **v.**

**HUNTER WARFIELD, INC.,**
**and EXPERIAN INFORMATION**
**SYSTEMS, INC.,**

      **Defendants.**

**CIVIL ACTION FILE**

**NO. _____**

## COMPLAINT about DAMAGES

### INTRODUCTION

1.  This action arises from collection and credit reporting activity related to a
    debt which was reduced to a judgment for a sum certain and for which
    the amount being demanded by defendant Hunter Warfield, Inc.
    (HUNTER WARFIELD) and reported to credit reporting agencies has
    been improperly inflated by excessive post-judgment interest not by the
    judgment.

2.  Plaintiff brings this action for damages against HUNTER WARFIELD
    for violations of the Federal Fair Debt Collection Practices Act
    (hereinafter "FDCPA"), 15 U.S.C. §§ 1692 et seq., the Federal Fair

Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681 et seq., as amended, and supplemental state law claims under the Georgia Fair Business Practices Act.

3.      Plaintiff brings separate claims against Experian Information Systems, Inc., (hereinafter "EXPERIAN") a major credit reporting agency, for violations of the FCRA, 15 U.S.C. §1681 et seq., as amended.

## SUBJECT MATTER JURISDICTION

4.      Subject matter jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p, 28 U.S.C. §§1331 and 1337 (federal question jurisdiction).

5.      Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

6.      This court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear Plaintiff's state law claims as they are so related to Plaintiff's federal question claim that they form part of the same case or controversy.

## PARTIES AND PERSONAL JURISDICTION

7.      Plaintiff was a resident of Gwinnett County Georgia at all relevant times and is authorized by law to bring this action.

8. The underlying judgment relating to this debt HUNTER WARFIELD is collecting was obtained on behalf of its client in Gwinnett County Georgia in 2014.

9. Defendant HUNTER WARFIELD is a corporation formed under the laws of the State of Maryland and does business in the state of Georgia.

10. HUNTER WARFIELD is subject to the jurisdiction and venue of this Court.

11. HUNTER WARFIELD is not registered with the Georgia Secretary of State and does not maintain a registered agent in Georgia.

12. HUNTER WARFIELD does substantial business in Georgia affecting Georgia residents.

13. HUNTER WARFIELD does not maintain an office in Georgia.

14. HUNTER WARFIELD does not keep assets in the State of Georgia.

15. HUNTER WARFIELD may be served on its registered agent in the state of Florida, to wit: Stephen Sobota, 4620 Woodland Corporate Blvd., Tampa, FL 33614.

16. Alternatively, HUNTER WARFIELD may be served by personal service upon an officer or authorized agent at its principal place of business, to wit: 4620 Woodland Corporate Boulevard, Tampa, Florida 33614.

17.   Defendant Experian Information Solutions, Inc. (hereinafter "EXPERIAN") is an Ohio corporation that regularly conducts business in the State of Georgia, and which has a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626-7037.

18.   EXPERIAN may be served by personal service upon its registered agent in the State of Georgia, to wit: C T Corporation System, 289 S. Culver Street, Lawrenceville, GA  30046-4805.

19.   In the alternative, each defendant may be served by personal or substitute service pursuant to the Federal Rules of Civil Procedure and, as applicable, the laws of the several states.

20.   Other defendants may be discovered in the course of litigation, and the plaintiff respectfully prays that the Court will permit the addition of later discovered parties upon motion.

## FACTS COMMON TO ALL DEFENDANTS

21.   On or about May 13, 2011, Plaintiff signed a lease agreement with TGM Vintage at Abacoa, LLC (hereinafter, "TGMVA") for an apartment located in Juniper, Florida.

22.    In 2012, the Plaintiff provided notice that he was going to terminate and not renew his lease with TGMVA.

23.    On or about November 9, 2012, TGMVA sent Plaintiff a written statement in response to his written lease termination notice, which contained an itemized accounting for what they alleged he owed. This itemized list included damages, early termination fees, and rent in the total amount of $5,471.34. The accounting statement then applied his $99 security deposit to the balance, leaving a stated Total Due from Resident in the amount of $5,372.34 as of said date.

24.    Plaintiff disputed all but the early termination fee of approximately $2480 and also agreed that some portion of the AUM water bill was owed, but specifically requested a copy of the bill so he could confirm the exact amount he owed on the water bill matched what they said he owed.

25.    Plaintiff attempted to settle the debt by offering the undisputed early termination fee and the water bill but this offer was rejected by the apartment complex management.

26.   On or about January 3, 2013, the Plaintiff received a letter from TGMVA in response to a dispute letter Plaintiff had sent TGMVA which disputed the then-current amount of $5,372.34 they said he owed.

27.   The disputed apartment debt was not resolved, and it was subsequently turned over to Hunter Warfield, a collection agency, which started a collection and credit reporting campaign related to this debt.

28.   On or about October of 2013, HUNTER WARFIELD hired Douglas I. Brooks, P.C. ("BROOKS") to take legal action to recover the disputed debt owed to TGMVA.

29.   HUNTER WARFIELD continued to maintain a file on Plaintiff and manage this account after it was sent to BROOKS for litigation.

30.   HUNTER WARFIELD often hires BROOKS when it tries to collect apartment debts from those living in or near Atlanta.

31.   BROOKS filed an action against Plaintiff on behalf of TGMVA, which ultimately reduced the apartment debt to a judgment in the State Court of Gwinnett County.

32.   The Gwinnett County State Court issued a final judgment on the TGMVA debt on August 20, 2014.

33.  The Gwinnett County State Court's Order held that "[TGMVA] have judgment on its Complaint against [GIVENS] in the principal amount of $5372.34, pre-judgment interest of $95.82, ***post-judgment interest at the legal rate***, attorneys' fees of $571.82 and court costs[.]" (Emphasis added.)

34.  Court costs were $307.00, which included a filing fee of $207, a sheriff's service fee of $50.00, and a venue transfer fee of $50.00 to move it from Columbia County to Gwinnett County.

35.  Although the August 20, 2014 judgment entered against Mr. Givens did not explicitly state a total amount owed, the amount was objectively calculable since it included a list of all amounts awarded by the Court.

36.  The August 20, 2014 judgment also included language that TGMVA was entitled to post-judgment interest at the "legal rate."

37.  The August 20, 2014 judgment did not specify any other higher interest rate that TGMVA was entitled to in the Order.

38.  The legal rate for calculation of post-judgment interest in Georgia at the time of the entry of the judgment per Georgia law, OCGA § 7-4-12, was 3.0% plus the then-current federal prime interest rate.

39.   The prime interest rate as of the date of judgment on August 20, 2014, was 3.25%.

40.   The judgment, therefore, fixed the post-judgment rate on the principal, fees and costs at 6.25%. The total amount of the judgment when all of the awarded amounts were added together was for $6,346.98.

41.   Post-Judgment interest at 6.25% on the principal amount of the judgment, plus attorney fees and court costs on the judgment, results in a per diem of $1.06 per day for the accruing post-judgment interest.

42.   The amount actually owed by Plaintiff is not the amount being reported by HUNTER WARFIELD on Plaintiff's credit reports.

43.   HUNTER WARFIELD furnished and continues to furnish to this date, inflated debt information to one or more of the major credit reporting agencies each month to reflect an inflated amount of debt owed.

44.   HUNTER WARFIELD furnishes monthly updates of all or almost all of the debtor information in its system to all of the major Credit Reporting Agencies, including Equifax, Experian and Trans Union.

45.    HUNTER WARFIELD furnished the Plaintiff's debt information relating to the  TGMVA debt that was reduced to judgment to Equifax, Experian and Trans Union on a monthly basis.

46.    At various points in time during the last 12 months, HUNTER
       WARFIELD furnished monthly inaccurate information to Experian.

47.    In or around April of 2019  Hunter Warfield reported to  EXPERIAN that
       Plaintiff's total debt to TGMVA  had grown to $11,693.00.

48.    Plaintiff received a credit report dated May 1, 2019, which confirmed this
       exaggerated amount.

49.    The stated delinquent balance HUNTER WARFIELD  reported through
       at least July of 2019, was not only inaccurate but grossly exaggerated by
       thousands of dollars.

50.    In or around August of 2020 the debt became stale for credit reporting
       purposes, as it had been delinquent for more than 7.5 years.

51.    The per diem HUNTER WARFIELD uses for post-judgment interest
       appears to be approximately $3.14 per day, which amounts to an interest
       rate of over 18%. This inflated rate of interest is nearly triple the Georgia
       legal rate (6.25%) of interest they were awarded.

52.     The HUNTER WARFIELD collection tradeline was the *only* negative
       collection or negative account item contained in the Plaintiff's credit file
       with EXPERIAN or with any of the other major credit reporting agencies
       in May of 2019.

53. Plaintiff has repeatedly disputed the amount of the debt directly to HUNTER WARFIELD, TGMVA, and each of the major credit reporting agencies.

54. The false information reported by HUNTER WARFIELD was originally present as an adverse collection item on Plaintiff's reports issued by all three major credit reporting agencies: EQUIFAX, EXPERIAN, and TRANSUNION, LLC.

55. Both TRANSUNION and EQUIFAX deleted the adverse information when they received nearly identical dispute letters to the letter Plaintiff had sent to Experian.

56. EXPERIAN, unlike the other major credit reporting agencies, did not delete the adverse information in response to Plaintiff's dispute.

57. The adverse information has been published to numerous third parties who have made inquiries into the Plaintiff's credit history with Experian.

58. HUNTER WARFIELD's actions have adversely affected his credit score and also had a chilling effect on his ability to obtain new credit.

59. Plaintiff was unable to enter the borrowing marketplace with a fair representation of his credit history.

60.     On or about March 4, 2019, the Plaintiff received his annual free credit report from the three major credit reporting agencies, including the defendant EXPERIAN.

61.     As of March 18, 2019, all three major credit reporting agencies were still reporting that the Plaintiff owed an inflated debt amount of $11,494.00.

62.     On March 27, 2019, the Plaintiff sent certified disputes relating to the HUNTER WARFIELD collection item to all three major credit bureaus, including TRANS UNION, EXPERIAN and EQUIFAX.

63.     Equifax and Trans Union unilaterally deleted

64.     On or about April 24, 2019, EXPERIAN responded to Plaintiff's dispute claiming that they had updated the information regarding the dispute account.

65.     The updated balance EXPERIAN reported following Plaintiff's dispute letter was then increased to $11,693.00—approximately $200 more than it was previously reporting.

66.     The dispute letters that the Plaintiff sent to all three of the major credit reporting agencies were sent via certified mail with a domestic return receipt.

67.   EXPERIAN's failure to correct the TGMVA collection account reported by HUNTER WARFIELD coupled with EQUIFAX and TRANSUNION's deletion of the collection tradeline indicates that EXPERIAN's procedures to assure maximum accuracy of the information they report is flawed and not up to the standards of the rest of the industry.

68.   Plaintiff specifically advised EXPERIAN that the amount of the debt was inflated and not being accurately reported.

69.   EXPERIAN failed to follow-up with the Plaintiff and either call or write to him to discuss his dispute.

70.   EXPERIAN failed to follow-up with any third party and either call or write to him to discuss his dispute.

71.   The reporting of this inflated adverse collection item financially impacted the Plaintiff.

72.   The reporting of the inflated amount of this adverse collection item has caused him emotional distress.

73.   Plaintiff spent valuable time and effort during the last several years trying to correct the inaccurate information reported by Defendant HUNTER

WARFIELD and maintained by credit reporting agency Defendant EXPERIAN.

74. Plaintiff has incurred expenses for mailing letters to Defendants and some Non-Defendants.

75. Plaintiff has complied with all conditions precedent to bring this action.

## FACTS AS TO HUNTER WARFIELD

76. HUNTER WARFIELD uses telephone communications in its business.

77. HUNTER WARFIELD uses the mails in its business.

78. The principle purpose of HUNTER WARFIELD's business is the collection of debts.

79. HUNTER WARFIELD regularly collects or attempts to collect debts owed or due, or asserted to be owed or due, another.

80. HUNTER WARFIELD is a debt collector as defined by the FDCPA.

81. HUNTER WARFIELD is a furnisher of consumer information ("furnisher") to EXPERIAN and other credit reporting agencies (hereinafter, "CRAs") as contemplated by the FCRA.

82. HUNTER WARFIELD did not retract its adverse collection reporting in response to Plaintiff's disputes.

13

83. HUNTER WARFIELD continued to report the inaccurate and disputed data monthly until it was obsolete in or around August of 2019.

84. As recently as April of 2019, HUNTER WARFIELD reported a balance owed by Plaintiff that includes excessive interest.

85. In response to Plaintiff's disputes, EQUIFAX and TRANS UNION deleted the tradeline.

86. Despite actual knowledge that at least two Credit reporting agencies were barring the information from being reported to Plaintiff's credit file, HUNTER WARFIELD continued reporting false and inflated information to the third major credit reporting agency, EXPERIAN.

87. HUNTER WARFIELD did not do a meaningful investigation of the disputed account after being notified of the dispute by EQUIFAX, EXPERIAN or TRANS UNION.

88. HUNTER WARFIELD does not maintain adequate records or procedures to accurately account for accrued interest on any of its accounts that were reduced to a judgment in Georgia.

89. HUNTER WARFIELD reported false information with actual knowledge of errors.

90.   HUNTER WARFIELD reported false information after having received notice and confirmation of errors.

91.   The continued reporting of known to be inaccurate data is a common collection and credit reporting tactic that attempts to extort additional money that is not owed.

92.   HUNTER WARFIELD's use of such tactics was intentional and committed with reckless disregard of the Plaintiff 's welfare.

93.   The acts of HUNTER WARFIELD have in fact caused Plaintiff to experience emotional distress, anxiety, worry, and concern.

94.   As a direct result of HUNTER WARFIELD's actions, Plaintiff has suffered actual damages in the form of economic loss, denial of credit, lost opportunity to receive credit, interference with Plaintiff's normal and usual activities, damage to reputation, invasion of privacy, credit defamation, and emotional distress (including anxiety, frustration, embarrassment and humiliation).

95.   Defendant HUNTER WARFIELD's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

## FACTS AS TO EXPERIAN

96.    Defendant EXPERIAN is a "consumer reporting agency" ("CRA") under the FCRA. 15 U.S.C. § 1681a(f).

97.    At all times pertinent hereto, EXPERIAN was a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

98.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

99.    At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

100.   Pursuant to the FCRA, Defendant EXPERIAN must follow procedures that assure that the reports it sells meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

101.   EXPERIAN failed in this case to maintain procedures to assure the maximum possible accuracy of the Plaintiff's personal credit file.

102.   EXPERIAN has been reporting derogatory and inaccurate information relating to Plaintiff and Plaintiff's credit history to third parties (hereinafter the "inaccurate information").

103.   The inaccurate information that EXPERIAN reported included HUNTER

WARFIELD's false report that the Plaintiff owed an inflated sum to

TGMVA that exceeded the amount owed in an earlier judgment.

104.   The inaccurate information negatively reflected upon the Plaintiff,

Plaintiff's credit repayment history, Plaintiff's financial responsibility as

a debtor, and Plaintiff's creditworthiness.

105.   EXPERIAN was reporting inaccurate information through the issuance of

false and inaccurate consumer credit reports that it has disseminated to

various persons, entities and credit grantors, both known and unknown.

106.   Plaintiff has disputed the inaccurate information with EXPERIAN on at

least one occasion and did so following EXPERIAN's established

procedures for disputing consumer credit information.

107.   In response to this dispute, EXPERIAN reaffirmed the false and

inaccurate information that HUNTER WARFIELD was furnishing.

108.   As of the date of filing of this complaint, EXPERIAN  is no longer

reporting the adverse HUNTER WARFIELD debt in its credit file on the

plaintiff because the information is not obsolete.

109.   Despite Plaintiff's efforts, EXPERIAN never timely: 1) contacted the

Plaintiff to follow up on, verify, or elicit more specific information about

Plaintiff's disputes; 2) contacted any third parties that would have relevant information concerning Plaintiff's disputes; 3) forwarded any relevant information concerning Plaintiff's disputes to the entities originally furnishing the inaccurate information; or 4) requested or obtained copies of any documents from either the Plaintiff, TGMVA, or HUNTER WARFIELD.

110. Despite Plaintiff's efforts, EXPERIAN deliberately, willfully, intentionally, recklessly or negligently failed to perform reasonable reinvestigations of the above disputes as required by the FCRA, failed to timely remove the inaccurate information, and continues to report the derogatory inaccurate information about the Plaintiff as of the filing of this Complaint.

111. As a direct result of EXPERIAN's actions, Plaintiff has suffered actual damages in the form of economic loss, denial of credit, lost opportunity to receive credit, interference with Plaintiff's normal and usual activities, damage to reputation, invasion of privacy, credit defamation, emotional distress (including anxiety, frustration, embarrassment and humiliation).

112. At all times pertinent hereto, EXPERIAN was acting by and through its agents, servants or employees, who were acting within the course and

scope of their agency or employment, and under the direct supervision and control of the EXPERIAN.

113.   At all times pertinent hereto, the conduct of EXPERIAN, as well as that of its agents, servants, or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff herein.

## CAUSES OF ACTION

## COUNT ONE: FAIR DEBT COLLECTION PRACTICES ACT NONCOMPLIANCE BY HUNTER WARFIELD

114.   The acts of HUNTER WARFIELD constitute violations of the Fair Debt Collection Practices Act.

115.   HUNTER WARFIELD's violations of the FDCPA include, but are not limited to, the following:

116.        Engaging in conduct for which the natural consequence is to harass, oppress or abuse any person, in violation of 15 U.S.C. § 1692;

117.    The use of any false, deceptive, or misleading representations or means in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e;

118.    The false representation of the character, amount, or legal status of any debt, in violation of 15 U.S.C. § 1692e(2)(A);

119.    Communicating, or threatening to communicate, to any person, credit information which is known or which should be known to be false, in violation of 15 U.S.C. § 1692e(8);

120.    The use of unfair or unconscionable means to collect, or attempt to collect, any debt, in violation of 15 U.S.C. § 1692f; and

121.    The collection of any amount that is not due per agreement or law, in violation of 15 U.S.C. § 1692f(1).

122.    As a result of said HUNTER WARFIELD's actions, Plaintiff is entitled to an award of 1) actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities, 2)

statutory damages, as well as 3) an award of costs and attorney fees.

## COUNT TWO: FAIR CREDIT REPORTING ACT NEGLIGENT NONCOMPLIANCE BY HUNTER WARFIELD

123. The FCRA requires that a furnisher of information, such as HUNTER WARFIELD, upon receiving notice of a dispute from a credit reporting agency, "conduct an investigation with respect to all the disputed information." The furnisher must review all relevant information provided to it by the credit reporting agency as part of the investigation. After conducting its investigation, the furnisher must inform the credit reporting agency of its results. If the furnisher finds the information is incomplete or inaccurate, or cannot be verified, it must modify, delete, or permanently block the reporting of the disputed information. 15 U.S.C. § 1681s-2(b).

124. The policies and procedures of HUNTER WARFIELD do not ensure compliance with this provision of the FCRA.

125. HUNTER WARFIELD negligently failed to comply with the requirements of the FCRA, including 15 U.S.C. §1681s-2(b).

126.   As a result of HUNTER WARFIELD's failure to comply with the

requirements of the FCRA, Plaintiff has suffered, and continues to suffer,

actual damages, including economic loss, denial of credit, lost

opportunity to receive credit, damage to reputation, invasion of privacy,

emotional distress and interference with Plaintiff's normal and usual

activities for which Plaintiff seeks damages in an amount to be

determined by the jury pursuant to 15 U.S.C. § 1681o(a)(1).

127.   Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2).

## COUNT THREE: FAIR CREDIT REPORTING ACT WILLFUL

## NONCOMPLIANCE BY HUNTER WARFIELD

128.   HUNTER WARFIELD willfully failed to comply with the requirements

of the FCRA, including 15 U.S.C. §1681s-2(b).

129.   As a result of HUNTER WARFIELD's failure to comply with the

requirements of the FCRA, Plaintiff has suffered, and continues to suffer,

actual damages, including economic loss, denial of credit, lost

opportunity to receive credit, damage to reputation, invasion of privacy,

emotional distress and interference with Plaintiff's normal and usual

activities for which Plaintiff seeks damages in an amount to be

determined by the jury pursuant to 15 U.S.C. § 1681n(a)(1).

130. The plaintiff is entitled to an award of punitive damages in an amount to

be determined by the jury pursuant to 15 U.S.C. § 1681n(a)(2).

131. Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT FOUR: GEORGIA FAIR BUSINESS PRACTICES ACT
## NONCOMPLIANCE BY HUNTER WARFIELD

132. HUNTER WARFIELD's actions constitute violations of Georgia's Fair

Business Practices Act, including but not limited to, the use of unfair or

deceptive acts or practices in the conduct of consumer transactions and

consumer acts or practices in trade or commerce.

133. The conduct of HUNTER WARFIELD is the direct and proximate cause,

as well as a substantial factor, in bringing about serious injuries, actual

damages, and harms to the Plaintiff that are outlined more fully above.

As a result, Defendant HUNTER WARFIELD is liable to the Plaintiff for

the full amount of actual, treble and exemplary damages, along with the

attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT FIVE: FAIR REPORTING ACT NEGLIGENT NONCOMPLIANCE AS TO DEFENDANT EXPERIAN

134. The FCRA requires that credit reporting agencies (CRAs) such as EXPERIAN, in preparing a credit report, "follow reasonable procedures to assure maximum possible accuracy of the information" in the report. 15 U.S.C. § 1681e(b).

135. The FCRA requires that CRAs conduct a reasonable reinvestigation of any information that is disputed by a consumer to determine if the information is accurate. CRAs must notify the source of the information of the dispute within five days. CRAs must provide the source with all relevant information received from the consumer. CRAs must review and consider all relevant information provided by the consumer in conducting the reinvestigation. CRAs must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified. CRAs must complete the reinvestigation within 30 days, or within 45 days if the dispute is based on a free annual credit report. CRAs must send a

consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation. 15 U.S.C. § 1681i(a).

136.   EXPERIAN's policies and procedures do not ensure compliance with these provisions of the FCRA.

137.   EXPERIAN negligently failed to comply with the requirements of the FCRA.

138.   As a result of EXPERIAN's failure to comply with the requirement of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities, for which Plaintiff seeks damages in an amount to be determined by a jury.

139.   Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

## COUNT SIX: FAIR CREDIT REPORTING ACT WILFUL NONCOMPLIANCE BY DEFENDANT EXPERIAN

140.   EXPERIAN willfully failed to comply with the requirements of the FCRA, including but not limited to, 15 U.S.C. §1681e and 1681i.

141.   As a result of EXPERIAN's failure to comply with the requirement of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress, and interference with Plaintiff's normal and usual activities, for which Plaintiff seeks damages in an amount to be determined by a jury.

142.   Plaintiff is entitled to punitive damages in an amount to be determined by the jury.

143.   Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681n(a)(3).

## JURY TRIAL DEMAND

144.   Plaintiff demands trial by jury on all triable issues.

## PRAYER FOR RELIEF

**WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT JUDGMENT BE ENTERED AGAINST DEFENDANTS, AND IN FAVOR OF PLAINTIFF, AS FOLLOWS:**

1. That Plaintiff be awarded actual, statutory, punitive, exemplary and treble damages;

2. That Plaintiff be awarded costs and the expenses of litigation including a reasonable attorneys' fee; and

3. That the Court grant such further and additional relief as is just in the circumstances.

Respectfully submitted,

SKAAR & FEAGLE, LLP

By:   s/ James M. Feagle_____
      James M. Feagle
      Georgia Bar No. 256916
      jfeagle@skaarandfeagle.com
      Cliff R. Dorsen
      Georgia Bar No. 149254
      cdorsen@skaarandfeagle.com
      2374 Main Street, Suite B
      Tucker, GA 30084
      Telephone:  (404) 373-1970
      Facsimile:   (404) 601-1855

      Kris Skaar
      Georgia Bar No. 649610
      kskaar@skaarandfeagle.com
      Justin T. Holcombe
      Georgia Bar No. 552100
      jholcombe@skaarandfeagle.com
      133 Mirramont Lake Drive
      Woodstock, GA 30189
      Telephone:  (770) 427-5600

Facsimile:    (404) 601-1855

*Attorneys for Plaintiff Ricky Givens*